May it please the court, Ted Frank for Appellant Frank Bednarz. This case is a simple application of Supreme Court and Ninth Circuit precedent, and whether it's decided under A4 or B3 or E2, what you simply cannot have is a single settlement class where there are substantial material differences in state law that dramatically affect the recoveries of class members, yet all class members are treated the same in a single settlement class. Amchem 521 at 620 emphasizes that the evaluation of class certification at the settlement phase is undiluted, even heightened, precisely because, unlike a litigation class certification, a settlement class certification ends the case, and there's no other opportunity to correct any problems with the certification. In a litigation, if the court notices that there are issues, it can modify the class certification, but at the settlement stage, it's important to get it right because there's only that one opportunity. And the court did not apply that undiluted or heightened scrutiny. It, if anything, did the exact opposite, because it had already decided the class certification issues, and it already decided that it could not certify a 50-state class precisely because of the differences in between repealer states and non-repealer states under Illinois BRIC. That presents a fundamental problem under B3, under this court's precedence in Maza, under Mexico money litigation. It presents a fundamental problem under A4 because it means there's this irreconcilable conflict between the interest between the class members from repealer states and non-repealer states. And it's not just a hypothetical conflict, but one that diluted the recovery of millions of class members by $15 to $20 million. And that is a problem under E2 as well, because the very first thing you're supposed to do under Churchill Village is look at the strength of the plaintiff's case versus the amount of recovery. Counsel, you sent us a 28-J letter, which is very helpful. So the district judge here, the same district court, has now approved a settlement with other defendants, and it's going to be a 90-10 split rather than a 50-50 split. Is that what I understand? It's not clear whether it's 50-50 because I'm not sure. Well, you're roughly 50-50 in this case. Right. It's pro rata in this case. Everybody gets the same. That's what I mean by 50-50. Yeah, exactly. It's between repealers and non-repealers. And I think that is about the population difference, but you're correct. And the new settlement is 90-10. And the new settlement is 90-10. Did the district judge in that case, in the new settlement, acknowledge anything about the pendency of this case or how she might view the prior settlements? Absolutely not. And we even flagged it in a brief below before she decided. It just seems like a very odd. So it just seems like it's more or less the same case, but with different defendants. Is that right? It's exactly the same case, just with different defendants. Plaintiffs give a timeline, but we also have a timeline on Pages 4 and 5 of our reply brief showing that the Illinois brick issue was firmly in front of the district court before the settlement had been decided and while the class certification motion had been penned in and yet proceeded that way. And as I understand it, the district court here didn't exactly reach the choice of law issue, but signaled her views on it. Would that be fair to say? That might be the best way to phrase it. It followed Sullivan and Trans-Pacific, despite the substantial differences in the Bednars objection in this case, between those cases. And that's at Page 8 of the record. Is a 90-10 settlement consistent with Illinois brick? I would think 100-0 would be the best way to be consistent with Illinois brick. But it's more consistent than Pro Rata? That's absolutely right. Do you object to the 90-10 split? Have you objected? We did not object to the 90-10 split because we already had this appeal pending and we decided we'd rather take the low-hanging fruit and we're a nonprofit with limited resources and we have to pick and choose our cases. But we signaled to the court that we thought it was objectionable, but we weren't going to object. But it did demonstrate the problem with the earlier settlement approval. So hypothetically, if the court were to come back and say 90-10 again, would you conserve your resources? That's probably what we would do. But it's not for the court to say 90-10. I mean, the settlement would have to be thrown out and the parties would have to negotiate a new settlement. The parties would have to negotiate it, but it would get subject to court approval, of course. That's correct. If there are no further questions, I'd like to reserve the rest of my time for rebuttal. Thank you. There's a button right underneath there. Yes, there is. You can lower the podium. And I need that button. Whoops. That's not going to work. That'll work. There we go. Thank you very much. Good morning, Your Honors. May it please the Court. Elizabeth Cabraser for the Plaintiff Class Appellees. Amchem and all of this Court's precedent, including the most recent Hyundai en banc, fully support affirmance of the challenged settlements. All of our cases, all of this Court's cases, class plaintiffs, Churchill, Bluetooth, Hanlon, Hyundai, all recite the same factors for review of the fairness, adequacy, and reasonableness of class settlements. And embedded in those factors is that the Court consider the stage of the proceedings. Antitrust cases typically proceed in phases. Most of them involve multiple defendants. Defendants settle at different stages of the proceedings over time. And the litigation landscape changes. Accordingly, settlement amounts in differing percentages of recovery can all be fair, adequate, and reasonable. And different allocations of those amounts among the class members can all be fair, adequate, and reasonable if they are assessed against the litigation landscape at the time. Because the very purpose of settlement and the reason this Court has repeated a strong judicial policy in favor of settlements is that it reduces risk to certainty. And the class was entitled to reduce its risks to certainty at the time these deals were struck. And at the time these deals were struck, all of the class members were at a high watermark. There was no conflict. There was no divergence between repealer and non-repealer states because the class certification motion, which had been briefed but not decided when these settlements were signed and when they were granted preliminary approval, sought nationwide certification for all states' claimants under California's Cartwright Act. We know that this... You were within three weeks of the denial of class certification, though, weren't you? We did not know that. The preliminary approval was on March 20th. April 12th was your denial of class certification. That is correct. But this also seems to me just a little bit different. I realize that you're trying to reduce risk, but this also seems like sort of an obvious error, that you've got a full settlement for people who live in states that haven't repealed the Illinois BRIC rule. And that just seems like just a plain legal error. Your Honor, it is not a plain legal error. In fact, it was the district court's initial view, after the settlements were reached and approved, which it was able to revisit on final approval. The district court knew what it had decided, it knew why it had decided it, and it knew what impact, in its view, it had on the future course of the claims. But instead of doing what might well have been the wrong thing and reducing the pro rata distribution to some other, the court looked at the settlement as of the stage of the proceedings at which it was reached when all had a claim under the Cartwright Act. It had not yet been certified. It had not been denied. And, in fact, as the court knew, there was never a dismissal of the repealer state's claims ever in this litigation. There was never summary judgment granted for those claims ever in this litigation. But what happened here was, as Judge Bybee says, there's the preliminary approval, then you have the class certification denial. And that's when the court basically concludes that the individuals from non-repealer states really didn't have a claim. Then you have final approval briefing. And various objections. And then I look at the court's order, which is about as conclusory as I've seen in a class action of this nature. The court acknowledges the objection about the state law issue and then says in one sentence, the court finds the settlement and the pro rata allocation fair and adequate despite these differences, with no analysis. So that actually is something that would give us pause even if we didn't have the Illinois brick issue. So why should we uphold that given the conclusory nature without analysis? Your Honor, with respect to this court and with respect to the district court, Judge Gonzalez-Rogers, as Hanlon holds, brevity is not error. The record here is plain. Both the preliminary and the final approval hearing transcripts demonstrate complete engagement by the court, arguments by objectors, arguments by proponents, discussion of Illinois brick, discussion of the Sullivan case, and discussion of all the court approval factors. The district court knew because the record reflected that the Illinois brick issue wasn't dead. It was preserved for appeal. It still would be preserved for appeal but for all of these settlements. And it could well have gone the other way. There was over 500 pages of briefing before the district court on all the issues relating to Illinois brick. That's why it's a little bit of a mystery. I think she was incredibly engaged. I think the parties had the issues there. But in light of her earlier rulings with respect to class certification and no explanation, we're kind of left at a loss as the basis for the fairness conclusion. And I agree, brevity can be great when it's also explanatory. Your Honor, I don't think it's a mystery. I think if the very lengthy record in this case were to be examined, and I mean the entire record, 22 hearings, I think at least 10 hearings by that point in time, extensive discovery, extensive fact development about the extent of the conduct of the defendants, several of them were headquartered in California, this was not a clear-cut issue. It could well have been reversed on appeal. It still can, particularly after the en banc in Hyundai, if we were going to keep reevaluating settlements as the litigation landscape changed, you'd see something like the stock market, where the stock rises and falls for, say, the non-repealers. But we stop the clock when we settle the case and we reduce risk to certainty, and we do that on what the litigation landscape looked like for all the class members at the time. And what it looked like for all the class members when the deals were reached were that everyone had a shot at class certification, there was going to be a nationwide class, the defendants were very concerned about that, they needed a nationwide release, they had to pay for that release, they had to give consideration to everyone in the class, and prorated distribution was presumptively fair. Under that holistic view, and we review settlements holistically, we don't take one little piece and say this could have been different. But bottom line, the district judge looks at this settlement and must have said to herself, I'm giving relief to people who aren't entitled to it. I disagree, Your Honor, and I disagree for this reason. First of all, this wasn't about entitlement to relief. The class certification decision, as Judge Rogers herself corrected appellant's counsel... I'm allowing a class of people to receive compensation for an injury the Supreme Court has told us doesn't exist. This was not a matter of constitutional standing, Your Honor. It wasn't a matter of entitlement to relief. It was a matter of statutory dispute under Illinois BRIC. Without getting into the weeds on Illinois BRIC, I would simply remind the Court that while the choice seems binary, are you a repealer state or a non-repealer state, those boundaries shift. And during the course of this litigation, the status of particular states as repealer or non-repealer did shift. Oregon became a repealer state. Everyone always argues about Puerto Rico. Everyone always argues about Montana. Illinois, where appellant bought the devices, has been accused of being a non-repealer state. So different judges, different courts at different times group these cases differently. You would have us draw the line at late 2016, early 2017. That's when the settlements were reached. And then that would be the landscape you think we would judge it against. I do think that, Your Honor, for this reason, as the Hyundai and Bank decision cited, there's a very interesting analogous Ninth Circuit case called Sincor, ERISA litigation. It's cited in Hyundai and Bank. The site, I believe, is 516 F3rd 1095. It's from 2008. And in that case, what happened was the parties reached a deal. They asked the court not to enter summary judgment, not class cert, something on the merits, dispositive, summary judgment. The court apparently had already written the summary judgment order, and so the court entered the order, and the defendant said, sorry, no settlement. The Ninth Circuit cited a very strong policy in favor of settlements in Sincor. It cited all the factors. I recited today including looking at the case at the time of the settlement and said, no, we're going ahead with the settlement. You can't get out of it because something changed. Neither could the defendants get out of this group of settlements on appeal because they thought things had changed with class certification. That wouldn't have been allowed. At the point the deal was reached and at the point of preliminary approval, the non-repealer people, and again, those boundaries shift, just like the repealer people, had reduced their risk to certainty. They had a prorated distribution of those settlements, which they're entitled to keep. I would also say this. This is not within any corners of AMCM because here there isn't a futures class. Everyone was affected by the same conduct when they bought the same products at the same time frame. No futures class. No different claims. No different injuries. But for the accident that some court after the fact might decide whether or not Counsel, I'd like to go back to something that you said. So you said that the boundaries were changing. That is, the States, that the definition of, or the list that States appear on They do change, yes, Your Honor. appears to move. But it doesn't look like we really had problems in the most recent settlement in figuring out those boundaries. Are the boundaries different between the two settlements? We look at the boundaries for the same principle that I indicated. We look at the boundaries as they exist at the time of the second batch of settlements or the last batch of settlements. All right. So here's the question I want to ask you, then. At the time of the most recent settlement, the 90-10, I assume that the district court has a list of States that it assumes that are the non-repealer States that would get the 10 percent. That's correct. It's not an undisputed list, but for purposes of settlement, the defendant's accepted. It's a list. A settled list. Now, would the list for this settlement at the time it was settled in 2017 have been different? Yes. I believe it may have been different with respect to Montana, Puerto Rico, and it would have been for Oregon, I believe, except that there is a case that has decided that Oregon's status is retroactive. And it would be easy enough to figure out Montana, Puerto Rico, and Oregon. Right. And, of course, as I forgot to mention, Florida, which is a very large and populous State, also has its repealer status disputed. What I'm suggesting, Your Honors, is that had this case gone to trial, the defendants were always free to challenge the repealer State status of any plaintiff. But because we settle cases, when we settle cases, we make stipulations for settlement purposes only, and we agree on lists. I'd also like to note... Let me just say that even though there might be some disputed States out there and it's disputed what's disputed... Yes. ...the equal settlement seems to not take any of that into account. Your Honor, the equal settlement takes these factors into account in accord with Ninth Circuit precedent. The risks of maintaining class certification throughout the case, that risk was equal for everyone at the time. The status of the litigation, that status was equal for everyone at the time. It was a coin flip, and the coin had not yet been flipped. We didn't know... But it's not a coin flip as between repealer States and non-repealer States. It may be a coin flip as to whether your clients are going to prevail, whether the class will prevail, or whether the defendants will prevail. I got the risks of litigation there. But this is about allocation within a class, not whether there's a settlement at all. The coin flip, Your Honor, was whether or not all of the class members, regardless of State purchase or residence, would proceed under California's Cartwright Act on the choice of law. As it turned out, what the class certification decision ruled as a threshold matter, and the district court corrected appellant on this, was not the choice of law issue, but an issue that also affected everyone equally in the class, regardless of repealer or non-repealer State. And that was the failure at the outset to prove antitrust impact fact of injury. That's why the class certification denial was without prejudice. So we were... I think we have your argument in mind, and we've given you quite a bit more additional time here. Thank you, Your Honor. So if you can wrap up, we'll give Mr. Frank his rebuttal. Thank you. Thank you very much, Your Honor. One thing that I would mention is that if this is about adequacy and loyalty, adequacy is as adequacy does. In this case, all of the class representatives were from repealer States. They always had the interests of repealer States plaintiffs, as well as non-repealers in mind. They did what was best for everyone to maximize both the overall value of the case and the leverage of all plaintiffs, both repealer and non-repealer, by striking these settlements at the high-water mark of all class members' uniform claims and interests before those diverged. The last batch of settlements occurred after divergence. These settlements occurred before divergence. The risk of inadequacy would have been, had these repealer class representatives thrown the non-repealer State class members under the bus by assuming to predict what the court would do on class certification and prior rulings. By the end of the day in this case, during the second batch of settlements, the last batch that our 28J letter from August 23rd describes, the positions had diverged and the repealers were finally a step ahead. Why were they a step ahead? We have, I think we've given you plenty of time, six extra minutes, six and a half extra minutes, and we have your argument in mind. Thank you very much, Your Honor. You have rebuttal time. Thank you, Your Honor. If we're going to talk about when the positions diverged, we can look at the very first Rule 23G hearing, and that's docket 148 at page 81, where Ms. Grazer, seeking class counsel, lead class counsel status, says, we have 27 repealer states to represent here. Everybody knew at the time, from the beginning of the case, because virtually every single indirect purchaser case is settled this way, that there are repealer states and there are non-repealer states, and the non-repealer states don't have a cause of action and have no recovery. And when you're talking about coin flips and the risks that the parties are facing, yes, repealer states are facing a coin flip risk of whether they will recover or they won't recover, but non-repealer states are facing two coin flips, a coin flip of whether they will recover or not recover under the facts of the case, but they're also facing the Hail Mary of whether they can get a ruling that California gets to dictate national antitrust law. And that's a substantially greater risk than the plaintiffs in repealer states are facing. And so if you're going to look at the strength of the case and the value of the recovery versus the risks, the risks are substantially greater for non-repealer states. You've cited Ms. Grazer's statement at a very early hearing that there were 27 repealer states. Is that list the same as to the most recent settlement? No, I think it's 30 in the most recent settlement. Okay. So there has been some shift in the list. If we were to send this back, presumably the district court would be free to make some adjustments there to account for changed circumstances between 2017 and 2019. I mean, there would have to be a new settlement, and the new settlement would take into account those changed circumstances. So there would have to be a new settlement of what amount attorney sees? Well, I mean, the class certification was improper, and the settlement approval was because it always treats them as a single class with equal recovery. If we were to take the end of 2016 and then the final settlements in early 2017, is the number 27 remain stable at that point? I don't know off the top of my head. I guess we would know it's somewhere between 27 and 30. I suppose that's correct. And just to clarify the record, Bednarz isn't just from Illinois. He also made a purchase in Massachusetts, where there isn't a dispute that it's a repealer state. The district court's finding isn't just a finding. It's a non sequitur error of law. The court says, I find predominance here, even though there are differences in individual law that would preclude recovery for some class members. And that's like saying, I find the defendant is guilty of murder, even though he didn't have the requisite intent that's required. If you have individual differences in state law that preclude recovery, under MAZA, that precludes predominance, under B-3. And that's there precisely to protect absent class members, like the repealer states. And Ms. Cabraser talks about the problem of throwing class members under the bus, and that's exactly why we have A-4 requirements of separate representation. That's recognized in AmChem, in Ortiz. And AmChem is not just about future and present, but it's against all of these sorts of intractable conflicts, which is why the ERISA precedent mentioned doesn't apply here. Because if there were separate representation, and the repealer subclass had a settlement, and the non-repealer class had a settlement, and whatever those numbers were, and then there was a ruling on the class certification or on the Illinois BRIC issue, yes, then the defendants couldn't get out of it. But the problem is, is that there wasn't that separate representation that A-4 requires. And that's why we have this conglomerated single settlement class that adversely affects the rights and means that somebody is getting thrown under the bus. Here it's the repealer state class members. Hyundai is not inconsistent with what we're asking for here. As you recall, in Hyundai, Hyundai did not overrule MAZA. It just simply found that the objectors did not meet their burden of proving that there were material differences in state law. But there's no dispute here that Bednar's raised those material differences, and the Court acknowledged that Bednar's raised those material differences. He cited them in his objection. He raised, in fact, the Court's own ruling at ER 274 to 278 that there were material differences that precluded a finding of predominance. And the Court certified the class anyway. I'm happy to answer any other questions the Court has, but I'm over my time. I'm still curious as to why, if we thought this had to go back, why the settlement would have to be renegotiated other than just the allocation of a settlement already negotiated? Well, the settlement cannot be approved, so it has to be a different settlement. The settlement approval has to be vacated, and it ceases to exist. Now the parties can just say, okay, here's the same settlement, and ask the judge to do it. I mean, I guess you could remand for a new hearing on whether it is, but there are no circumstances where the settlement could be approved under the law. All right. Thank you. Thank you. I'd like to thank both counsel for your argument today, as well as the very helpful briefing and 28J letters. Case of Indirect Purchasers v. Panasonic and Bednar's is submitted.
judges: Hawkins, McKeown, Bybee